# United States Court of Appeals
# for the Federal Circuit

---

**MEMORYLINK CORP.,**
**a Wisconsin Corporation,**
*Plaintiff-Appellant,*

v.

**MOTOROLA SOLUTIONS, INC. AND**
**MOTOROLA MOBILITY, INC.,**
*Defendants-Appellees.*

---

2014-1186

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:08-cv-03301, Judge John J. Tharp, Jr.

---

Decided: December 5, 2014

---

MATTHEW J. CAVANAGH, McDonald Hopkins LLC, of Cleveland, Ohio, argued for plaintiff-appellant. With him on the brief were DAVID B. CUPAR; and RICHARD N. KESSLER and PETER T. BERK, of Chicago, Illinois.

CHRISTOPHER LANDAU, Kirkland & Ellis LLP, of Washington, DC, argued for defendants-appellees. Of counsel on the brief were ANNE M. SIDRYS, NYIKA O. STRICKLAND, and JOEL R. MERKIN, of Chicago, Illinois. Of counsel was JOHN C. O'QUINN, of Washington, DC.

Before LOURIE, MOORE, and O'MALLEY, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Memorylink Corp. ("Memorylink") appeals from the decisions of the United States District Court for the Northern District of Illinois (i) granting summary judgment in favor of Motorola Solutions, Inc. and Motorola Mobility, Inc. (collectively, "Motorola") on the contract and patent infringement claims, *Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2013 WL 4401676 (N.D. Ill. Aug. 15, 2013) ("*Summary Judgment Opinion*"), and (ii) dismissing various tort claims as barred by the statute of limitations, *Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2009 WL 464338 (N.D. Ill. Feb. 23, 2009) ("*Dismissal Opinion*"). Because we conclude that the district court did not err in granting summary judgment or in dismissing the tort claims, we *affirm*.

## BACKGROUND

In late 1997, Peter Strandwitz ("Strandwitz") and Bob Kniskern ("Kniskern") approached Motorola, seeking to jointly develop a handheld camera device that could wirelessly transmit and receive video signals. By early 1998, they had constructed prototypes with wireless radio boards and technical information from Motorola, and Strandwitz had formed Memorylink as a funding entity specifically for that venture.

After the first successful demonstration at Motorola's offices in January 1998, Strandwitz sent a letter to Motorola in which he "agree[d] that any patents would be jointly owned by Motorola and Memorylink" and that Motorola should "head up the patent investigation." J.A. 4586. Strandwitz then sent Motorola a technical document that Kniskern drafted, entitled "Wireless Multimedia Core Technology Overview for Patent Review" ("Technology Overview"). After reviewing that document,

Motorola's attorney Hugh Dunlop sent a letter to Strand-witz in April 1998 (the "Dunlop Letter"). J.A. 250–54. The Dunlop Letter described the features to be focused on for patent applications and stated the attorney's under-standing that the inventors were Strandwitz, Kniskern, and two of Motorola's employees: Gary Schulz ("Schulz") and Jan-Michel Wyckoff ("Wyckoff"). The letter explicitly asked for Strandwitz and Kniskern to "let [the attorney] know if [they] disagree[d] with this determination of inventorship." J.A. 250. A proposed patent filing agree-ment was enclosed, which "contemplate[d] taking ad-vantage of [Motorola's patent] department for preparation and filing of patent applications," although "Motorola [was] open to alternative proposals" if Strandwitz and Kniskern preferred otherwise. J.A. 251. Attached to the proposed agreement was a copy of the Technology Over-view, with what the Dunlop Letter explained were dele-tions relating to areas in which Motorola was previously involved and thus in which it could not enter into agree-ments that might result in joint ownership of intellectual property. Shortly thereafter, Strandwitz, Kniskern, Schulz, and Wyckoff all signed an invention disclosure.

In June 1998, all four designated inventors signed the Assignment and Agreement ("Assignment"), transferring their rights to both Motorola and Memorylink. J.A. 258–65. The Assignment begins with the statement, "[f]or and in consideration of the sum of One Dollar to us in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged . . . ." J.A. 258. The designated inventors also signed an inventor declara-tion for the patent application, which Motorola filed once the Assignment was executed. U.S. Patent 6,522,352 ("the '352 patent"), which lists Strandwitz, Kniskern, Schulz, and Wyckoff as inventors, issued in February 2003.

In December 1998, before the '352 patent issued, Memorylink retained counsel at an intellectual property

law firm to "review the Memory Link/Motorola relationship" and "assess the existing Memory Link agreements." J.A. 4241–42; *see also* J.A. 4244. The same law firm subsequently filed a divisional patent application in January 2003, which listed the same four inventors. However, when Memorylink conducted an external investigation in November 2007, it was advised by an unaffiliated attorney that Schulz and Wyckoff were not proper co-inventors.

Memorylink then filed suit against Motorola in June 2008, alleging patent infringement and various torts mostly sounding in fraud, and seeking a declaration that the Assignment was void for lack of consideration. In response, Motorola moved to dismiss the entire Complaint, arguing that, *inter alia*, the tort claims were barred by the five-year statute of limitations. The district court rejected Memorylink's argument that its claims did not accrue until the inventorship problem was discovered and dismissed most of the claims. *Dismissal Opinion* at *4–8. The court reasoned that because Memorylink insisted that Motorola's employees contributed nothing to the idea, Memorylink should have known that they were not co-inventors when the Assignment was signed in 1998. *Id.* at *5. Because Memorylink was aware of all of the underlying facts in 1998, its claims were thus untimely. *Id.* at *4. However, the district court revived some claims upon reconsideration a few months later. *Memorylink Corp. v. Motorola, Inc.*, 2009 WL 3366974, at *5–6 (N.D. Ill. Oct. 15, 2009). In particular, the court chose to revive the claim of lack of consideration for the Assignment as a contract claim and therefore not time-barred, despite being originally pleaded as a fraud claim. *Id.* at *5.

Motorola later moved for summary judgment on the remaining claims, asserting that there was consideration to support the Assignment and it therefore could not be liable for infringement as a co-owner of the patent. The

district court found that the Assignment unambiguously stated that one dollar, as well as other good and valuable consideration, was received as consideration. *Summary Judgment Opinion*, 2013 WL 4401676, at *5. Because Memorylink eschewed reliance on parol evidence, the court rejected the arguments on the inadequacy of the consideration. *Id.* The court also found that Schulz and Wyckoff transferred their ownership interests in the patent, which is what Memorylink argued was the intended consideration. *Id.* at *6–7. And, if parol evidence were considered, the court found that Memorylink intended for patent prosecution representation, which was indisputably provided, to be part of the bargain. *Id.* at *7. The court therefore concluded that there was no genuine issue of material fact, and granted summary judgment in Motorola's favor on the contract claim. *Id.* Because the Assignment was valid, Motorola was a joint owner of the '352 patent and therefore could not be liable for infringement. Thus, the court also granted summary judgment of noninfringement to Motorola. *Id.* The court then entered final judgment under Federal Rule of Civil Procedure 54(b) for the claims now on appeal.

Memorylink timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's grant of summary judgment under the law of the regional circuit, here the Seventh Circuit. *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011). Applying the law of the Seventh Circuit, we review the grant of summary judgment *de novo*. *Chaklos v. Stevens*, 560 F.3d 705, 710 (7th Cir. 2009). Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We also review the district court's dismissal of claims under Rule 12(b)(6) under the law of the regional circuit. *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009). Applying the law of the Seventh Circuit, we review the dismissal on a statute of limitations defense *de novo*, *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000), accepting all well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

A.

We first address the district court's grant of summary judgment in favor of Motorola on the issue of consideration for the Assignment. The district court applied Illinois substantive law to interpret the assignment, *Summary Judgment Opinion*, 2013 WL 4401676, at *5 n.7, and the parties have not disputed that application on appeal. Illinois courts follow the "four corners" rule when interpreting contracts, which requires that "an agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. . . . It is not to be changed by extrinsic evidence." *Urban Sites of Chicago, LLC v. Crown Castle USA*, 979 N.E.2d 480, 490 (Ill. App. Ct. 2012) (quotation marks omitted). Consideration is a basic requirement of a contract, *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006), but nominal consideration will suffice to support a contract, *Davis v. Wells*, 104 U.S. 159, 168 (1881). Courts "will not inquire into the adequacy of the consideration." *Carter v. SSC Odin Operating Co.*, 976 N.E.2d 344, 352 (Ill. 2012); *see also Gavery v. McMahon & Elliott*, 670 N.E.2d 822, 827 (Ill. App. Ct. 1996) ("A court's inquiry into whether a contract is supported by consideration does not extend to examining the adequacy of the consideration. It is not a

court's function to review the amount of consideration unless the amount is so grossly inadequate as to shock the conscience.") (citation omitted).

Memorylink argues that the Assignment lacked consideration and therefore is not a valid contract. Although the document on its face lists consideration, Memorylink asserts that this language is mere boilerplate, evidencing a hollow shell only to be recorded in the U.S. Patent and Trademark Office. Memorylink claims that, instead, the underlying agreement was the mutual exchange of ownership interests from the inventors to Memorylink and Motorola. But because the Motorola employees were not proper co-inventors and therefore had no ownership interests to assign, Memorylink asserts, Strandwitz and Kniskern received no consideration. Memorylink further argues that the contract is invalid because Strandwitz and Kniskern only entered into the contract in reliance on their mistaken beliefs as to antecedent rights; that is, the beliefs that Schulz and Wyckoff were inventors because of Motorola's representations, that they were receiving ownership interests in exchange, and that they had to share ownership of any resulting patents.

Motorola responds that there is no genuine issue of material fact because consideration is explicit on the face of the agreement. Even if the consideration were actually the exchange of ownership interests, Motorola contends that Memorylink received what it bargained for: Schulz and Wyckoff's agreement to assign their patent rights jointly to Memorylink and Motorola. Moreover, Motorola notes, Memorylink received substantial "other" consideration in the form of patent prosecution representation, technical and engineering support, and business opportunities.

We agree with Motorola that there is no genuine issue of material fact that consideration existed, because the Assignment explicitly acknowledges consideration for the

sale, assignment, and transfer of rights relating to the wireless video technology. If extrinsic evidence is not considered to determine the intended consideration, as Memorylink urges, then the "four corners" of the agreement quite clearly contain recitals of consideration. The use of boilerplate language does not make the stated consideration invalid or nonexistent. Alternatively, if extrinsic evidence is considered, then the district court held that other intended consideration could be found from various exchanges between Motorola and Memorylink. *Summary Judgment Opinion* at *7.

Furthermore, consideration was actually exchanged. Even drawing the inference in Memorylink's favor that the exchange of ownership interests was the *only* intended consideration contained within the four corners of the document, we find no genuine dispute of material fact. Schulz and Wyckoff did in fact transfer whatever ownership rights they possessed to Memorylink and Motorola by executing the Assignment. Whether they are later determined to have been erroneously included as co-inventors, and thus those rights are eventually decided to be nonexistent, does not create a genuine issue of material fact on the consideration issue. Although Memorylink argues that the Assignment is not analogous to a quit-claim deed because the latter involves a buyer who understands that the interests conveyed are uncertain and may turn out to be valueless, that distinction is unavailing. A party assigning patent rights before a patent application is filed or during patent prosecution cannot guarantee that a patent will issue or, even once issued, that the patent will not be later invalidated.

Memorylink's arguments about mistake and unfairness are also unconvincing. Summary judgment was reversed in *Harbaugh v. Hausman*, 569 N.E.2d 523, 528–29 (Ill. App. Ct. 1991), because the defendants were claiming a mutual mistake of law by the parties in entering the contract, not a lack of consideration. However,

Memorylink did not attempt to pursue its claim under a theory of mutual mistake; instead, it chose to allege that Motorola *knew* the inventorship determination was wrong. The only reasonable inference from the facts alleged, in the light most favorable to Memorylink, would be that Motorola was not mistaken as to inventorship, which precludes any basis for finding a mutual mistake. Moreover, we do not find the consideration to be so insufficient as to shock the conscience of the court; we thus decline to examine the adequacy of the consideration. *Gavery*, 670 N.E.2d at 827.

We therefore conclude that Memorylink raised no genuine issue of material fact and that the district court did not err in granting summary judgment in favor of Motorola on the issue of whether there was consideration supporting the patent assignment.

## B.

We next consider the district court's dismissal of the tort claims. The statute of limitations for fraud-based claims in Illinois bars claims five years after accrual. 735 Ill. Comp. Stat. 5/13-205; *Horbach v. Kaczmarek*, 288 F.3d 969, 977 (7th Cir. 2002). The discovery rule delays the start of the clock until "the plaintiff knew or should have known" of the injury, *Horbach*, 288 F.3d at 973, but the normal five-year period applies where the purported fraud is "readily apparent to the naked, non-expert eye," *id.* at 977. An attorney's failure to flag a potential claim or provision of erroneous advice does not toll the statute of limitations. *Weger v. Shell Oil Co.*, 966 F.2d 216, 219 (7th Cir. 1992) (applying Illinois law); *accord Witherell v. Weimer*, 421 N.E.2d 869, 875 (Ill. 1981) (quoting *United States v. Kubrick*, 444 U.S. 111, 124 (1979)).

Memorylink argues that mere knowledge of the facts underlying a claim is insufficient to start the statute of limitations clock; rather, the claim should not accrue until those facts lead to the conclusion that a legal claim exists.

Because of the fiduciary duty owed to it by Motorola's attorney, Memorylink maintains that it had no reason to question the improper inventorship determination and thus could not have concluded that any of the tort claims existed before its external investigation in 2007.

Motorola responds that Memorylink knew all the relevant facts that serve as the basis for its claims—who was listed as an inventor and who contributed what—well before the statute of limitations had run. Moreover, Motorola contends, the allegations relating to the attorney–client relationship or faulty legal advice have no bearing on when the tort claims accrued, which is conditioned upon knowledge of the *factual* basis for a claim. Motorola also argues that Memorylink knew or should have known of its tort claims when Memorylink retained its own patent counsel in 1998, or when that same counsel filed the divisional application in January 2003.

We agree with Motorola that the district court properly dismissed the tort claims because Memorylink knew all the facts necessary to assert its claims, and therefore its causes of action accrued, more than five years before it filed suit. Memorylink alleged that as of April 1998, although "neither Schulz nor Wyckoff had contributed or done anything towards the conception of the Invention," J.A. 156–57, Motorola had asserted that all four people were co-inventors. The Dunlop Letter provided a prime opportunity for Strandwitz and Kniskern to question that inventorship determination, yet they failed to do so. Memorylink had additional occasions in 1998 at which to inquire about or challenge the issue of inventorship, including the signing of the invention disclosure, the Assignment, and the inventor declaration for the patent application. Even accepting the Complaint's allegations as true, we agree with the district court that Memorylink reasonably should have concluded that a legal claim existed based on Schulz and Wyckoff having contributed nothing to the conception of the invention yet being

included as co-inventors on various documents relating to the invention. Memorylink did not later learn of any new and significant facts underlying the tort claims to warrant tolling the statute of limitations.

Memorylink's arguments about the timing of and the fiduciary duties owed from the attorney–client relationship are also unpersuasive. The accrual of any claim was not delayed by the alleged false statements and omissions regarding the in-house attorney's inventorship determination. J.A. 157–60; *Witherell*, 421 N.E.2d at 875. Even if, as alleged in the Complaint, Motorola's attorney had not explained inventorship, assignment, or joint ownership, Strandwitz and Kniskern were aware of that when they signed the Assignment. Moreover, Memorylink obtained independent legal counsel soon thereafter, and thus reasonably should have discovered any legal claims it had well before the statute of limitations period had run. Instead, it failed to challenge the inventorship determination until June 2008. The district court therefore did not err in dismissing the various tort claims as untimely.

## C.

As for the patent infringement claim, we find no genuine issue of material fact because there was a valid assignment, and thus no error of law in granting summary judgment. Because we have affirmed the district court's summary judgment in favor of Motorola on the consideration issue, we accordingly affirm the summary judgment of noninfringement.

### CONCLUSION

We have considered the remaining arguments and conclude that they are without merit. For the foregoing reasons, the district court's grant of summary judgment and dismissal of the tort claims are affirmed.

**AFFIRMED**